# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| **Philip M. Sebolt,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | 1:17cv1212 (AJT/MSN) |
| ) | |
| **John A. Pindelski, et al.,** ) | |
|     **Defendants.** ) | |

<u>MEMORANDUM OPINON AND ORDER</u>

      Philip M. Sebolt, a federal inmate proceeding <u>pro se</u>, filed a civil rights action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), seeking monetary damages and declaratory relief for defendant's failure to admit him to a sex offender treatment program. [Dkt. No. 1]. The Court dismissed his complaint on November 16, 2017 [Dkt. No. 3] and denied plaintiff's motion for reconsideration. [<u>Id.</u> 4, 6]. Plaintiff filed a motion to amend, a motion to vacate and a notice of appeal. [<u>Id.</u> 7, 8, 9]. While the matter was on appeal, the Court filed a Memorandum of Intent indicating it was inclined to grant the motion to vacate and leave to amend [<u>Id.</u> 16 at 2], and the Fourth Circuit remanded the matter on March 11, 2019. [<u>Id.</u> 21].

      On August 6, 2019, the Court granted plaintiff 's motion for reconsideration, vacated the November 16, 2017 order dismissing the complaint, and granted plaintiff leave to file an amended complaint. [Dkt. No. 26]. Plaintiff filed his amended complaint on September 19, 2019. [Dkt. No. 28]. The amended complaint reasserts an Eighth Amendment claim citing <u>Bivens</u> [Dkt. No. 28 at 31-32] (Count 1) and adds two claims (Counts 2 and 3) under the Federal Torts Claims Act (FTCA), the United States as a defendant, and seeks injunctive relief citing 5 U.S.C. § 702 of the Administrative Procedures Act.

Because plaintiff is a prisoner, the Court must screen his complaint to determine whether it is frivolous, malicious, or fails to state any claims upon which relief may be granted. See 28 U.S.C. § 1915A. In reviewing a prisoner complaint pursuant to § 1915A, a court must dismiss any complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to ''state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id. at 678, and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...." Twombly, 550 U.S. at 555. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995). The court may "apply common sense, reject the fantastic, and rebut alleged matters with judicially noticeable facts." Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 954 (4th Cir. 1995) (en banc) (citation omitted).

Section 1915 (e)(2) standards "permit the Court to sua sponte dismiss claims that are clearly barred by the relevant statute of limitations." See Brown v. Harris, No. 3:10cv613, 2012 U.S. Dist. LEXIS 124, 2012 WL 12383, at *1 (E.D. Va. Jan. 3, 2012) (citing Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655-57 (4th Cir.2006); Nasim, 64 F.3d at 955); see also Ali v. Higgs, 892 F.2d 438, 440 (5th Cir. 1990) (appellate court, even if a district court has not considered an affirmative defense, may sua sponte consider the affirmative defense of the statute of limitations when they are "obvious and facially meritorious").

### I. Plaintiff's Allegations

Plaintiff is a federal inmate currently confined at USP Tucson. In 2004, he was convicted in the Northern District of Illinois of possession, distribution, and advertising for the production of child pornography and received a sentence of thirty (30) years in prison. [Dkt. No. 28 at 2, 11]. He has been in the custody of the Federal Bureau of Prisons ("FBOP") since 2002, first as a pretrial detainee and then as a sentenced inmate. [Id. at 7].

Plaintiff states that during his pretrial detention at the Metropolitan Correctional Center Chicago ("MCC Chicago") from 2002 until 2006 he expressed to the psychological staff on multiple occasions that he wished to participate in the FBOP's Residential Sex Offender Treatment Program ("SOTP-R), but the "request ... fell on deaf ears." [Id. at 7]. Named defendant John A. Pindelski was the Chief Psychologist at MCC Chicago during this period. [Id.]. In 2002, plaintiff alleges he believed he was "suffering with a serious mental health condition" [Id. at 17], and asked Dr. Pindelski about sex offender treatment and Dr. Pindelski gave him information about the SOTP-R program. [Id. at 18]. During his incarceration at MCC Chicago he requested a transfer to FCI Butner because it had a SOTP-R program, but instead he was moved to USP McCreary which he alleges had no sex offender treatment available. [Id. at

18-19]. Dr. Pindelski reported that plaintiff's "logic was impaired" and diagnosed plaintiff as not suffering from "a severe mental disease or defect." [Id. at 18].

Plaintiff arrived at USP McCreary on June 21, 2006. "Immediately upon arrival" he alleges he told the psychology staff that he wished to obtain sex offender treatment, but his requests were denied. [Id. at 7]. As a result, he alleges his "mental health condition quickly got the best of him," and he began to engage in risk-relevant behaviors which can indicate risk of future sexual re-offending. [Id.]. Named defendants Dr. Stephanie Rush, Holly Anderson, and Warden Doug Stine are employed at USP McCreary. [Id. at 3-4].

In April 2008, plaintiff was transferred to FCI Petersburg. Although he believed he was being transferred so he could participate in the Non-Residential Sex Offender Treatment Program ("SOTP-NR"), it turned out that he was placed at FCI-Petersburg only for management purposes. [Id. at 8]. Plaintiff alleges that despite the risk of serious harm his mental illness posed not only to himself but also to the safety and security of the institution and the general public, no defendant intervened or offered him sex offender treatment. As a result, he alleges his condition worsened, and his behaviors persisted. [Id. at 8-9]. Named defendants Dr. Rob Nagle, Dr. Kelli Heck, Dr. William Bickart and Dr. Andrea Weisman are employed at FCI-Petersburg. Also named as a defendant is Dr. Andres Hernandez, the Director of the SOTP program. [Id. at 3-5].

From 2006 until 2010, plaintiff alleges he engaged in "numerous inappropriate behaviors ... associated with his pedophiliac condition." [Id. at 13]. These activities occurred first at USP McCreary and continued after plaintiff was transferred to FCI-Petersburg. [Id. at 13-16]. The chief psychologist at USP McCreary informed plaintiff that he could be considered for treatment at the SOTP-R program at Butner when he had 36 months left to serve before his release, but that

would not occur for another 19 years. [Id. at 19-20]. After plaintiff was transferred to FCI Petersburg it was again determined that he was ineligible for participation in sex offender treatment because his projected release date was 2028. [Id. at 21].

In January 2010, plaintiff approached a fellow inmate who had been scheduled for release and asked him to mail a package on plaintiff's behalf. As the inmate was being processed out of the institution his property was searched, and numerous envelopes were discovered containing solicitations by plaintiff for child pornography, books containing nudity, and other such materials. [Id. at 24]. A subsequent search of plaintiff's property revealed a book containing many photographs of children in a hidden compartment. [Id. at 25]. On September 13, 2012, plaintiff was convicted of advertising to receive and buy child pornography intended to travel in interstate or foreign commerce, and on January 28, 2013 he was sentenced to life in prison. The Fourth Circuit Court of Appeals affirmed the conviction and sentence, and the United States Supreme Court denied certiorari on October 5, 2015. [Id. at 25-26]. Plaintiff asserts that the defendants violated his Eighth Amendment right to be free of cruel and unusual punishment by failing to provide him with mental health care, thereby subjecting him to a substantial risk of harm. [Id. at 13].

## II. Bivens

To state a viable Bivens claim, a plaintiff must allege facts that indicate a person acting under color of federal authority deprived him or her of a constitutional right. See Goldstein v. Moatz, 364 F.3d 205, 210 n.8 (4th Cir. 2004) (citing Bivens, 403 U.S. at 389). Regarding plaintiff's Eight Amendment claim for denial of medical care, he must first show that he has an objectively serious medical need that has been "diagnosed by a physician as mandating treatment or … is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention." See Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (quoting Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). Second, the plaintiff must show that the defendant prison official acted with a "sufficiently culpable state of mind," namely that "the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." See Farmer v. Brennan, 511 U.S. 825, 834, 847 (1994) (internal quotation marks and citation omitted); see also Scinto, 841 F.3d at 225. Plaintiff's amended complaint does not state an Eighth Amendment claim.

The Fourth Circuit has held that a prisoner

is entitled to psychological or psychiatric treatment if a physician or other health care provider, exercising ordinary skill and care at the time of observation, concludes with reasonable medical certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial. The right to treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable.

Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977). Bowring went on to note that the court "disavow[ed] any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment. The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion." Id. at 48. In addition, inmates have no constitutional interest in participation in a rehabilitation program. See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (inmate has no legitimate statutory or constitutional entitlement in eligibility for rehabilitative program sufficient to invoke due process when eligibility decision is discretionary with prison officials); Bowring, 551 F.2d at 48 n.2.

Plaintiff's allegation is not that he was not given treatment by the defendants, but that the defendants, in accordance with FBOP policy, informed plaintiff he was ineligible until he was within 36 months of release for the specific type of treatment he wanted – to be placed in the

SOTP-R program. Because plaintiff was not eligible when he inquired about the SOTP-R until he was within 36 months of his projected release date, plaintiff has concluded he was denied mental health treatment.

Plaintiff's own complaint, however, establishes that he has seen numerous mental health doctors during his time in the federal penal system. The only diagnosis by his FBOP doctors that he includes in his complaint is Dr. Pindelski's, which concluded that plaintiff was not suffering from a "serious mental disease or defect." [Dkt. No. 28 at 18].[1] See Riddle v. Mondragon, 83 F.3d 1197, 1204 (10th Cir. 1996) (mere fact a prisoner is a convicted sexual offender does not mean that he has "psychological disorders" or that he needs "psychiatric treatment") (citation omitted); Bailey v. Gardebring, 940 F.2d 1150, 1155 (8th Cir. 1991) (failure of prison administrators to provide "precisely tailored psychiatric treatment" for sexual psychopaths cannot fairly be described as "deliberate indifference").

Plaintiff's case is similar to the failings noted by the Tenth Circuit in affirming the dismissal of a state inmate's Eight Amendment claim noting the inmate had "failed to even approach the showing that is necessary to establish an Eighth Amendment violation under Estelle. Most importantly, [the inmate] has failed to offer any evidence showing that he suffers

---

[1] In his memorandum in support of his motion to reconsider, plaintiff alleges a private clinician diagnosed him "with a pedophilic disorder," but that he never disclosed that diagnosis to FBOP officials. [Dkt. No. 5 at 2]. The alleged private diagnosis plaintiff alleges, however, does not mandate treatment. See Diaz v. Lampela, No. 13-cv-1098-WJM-MJW, 2014 U.S. Dist. LEXIS 22810, *8 (D. Col. Feb. 24, 2014) ("although Plaintiff has been diagnosed as having the mental condition of pedophilia, treatment for his pedophilia has not been mandated."). It is also something he apparently never shared with any of the named defendants. See also Bossert v. Williams, No. 3:11-CV-3044-AC, 2012 U.S. Dist. LEXIS 140338, *18, 2012 WL 450894 (D. Or. Aug. 8, 2012) (rejecting plaintiff's vague allegations of how his alleged pedophilia impacts on his daily activities are not sufficient to amount to a serious medical need) (citing Ramos v. Vaughn, No. 94-2596, 1995 U.S. Dist. LEXIS 21644, 1995 WL 386573 (E.D. Pa. June 27, 1995) (the court stated that it "is not aware of any legal authority for the proposition that the need for sex offender treatment is a serious medical need for Eighth Amendment purposes").

from a serious psychiatric problem, and we decline to infer such a problem based solely on [his] status as a convicted sex offender." Brown v. Chandler, No. 04-7024, 111 Fed. Appx. 972, 976, 2004 U.S. App. LEXIS 20897, *11 (10th Cir. Oct. 6, 2004).

Plaintiff has not established that the numerous doctor-defendants he has seen while in federal custody have neglected his mental health, what he alleges is that he was not placed in a sex offender treatment program.[2] An inmate's mere disagreement with the course of treatment provided by medical officers, however, will not support a valid Eighth Amendment claim.[3] Estelle v. Gamble, 429 U.S. 97, 107 (1976) (disagreement with the level and type of treatment "does not represent cruel and unusual punishment"); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (plaintiff was under constant medical supervision from the time of his arrival" in state prison and that "[q]uestions of medical judgment are not subject to judicial review").[4]

---

[2] Indeed, the facility at which plaintiff is presently housed, USP-Tucson, Arizona, offers non-residential sex offender treatment Bureau of Prisons website: https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp (last viewed on April 14, 2020).

[3] "A difference of opinion over the adequacy of treatment will not give rise to a violation of the Eighth Amendment. See Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical staff do not violate the Eighth Amendment simply because the opinion of the inmate conflicts with that of the prison medical staff). Similarly, the provision of general therapy, but not the specific type of therapy sought by the prisoner, does not amount to a violation of the Eighth Amendment. Shultz v. Seals, 200 Fed. Appx. 654, 655 (9th Cir. 2006)." Bossert, 2012 U.S. Dist. LEXIS 140338, *19-20, 2012 WL 4508942.

[4] Contrary to plaintiff's position that he only has one treatment option, there is more than one type of therapy for a DSM-5-302.2, pedophilia diagnosis. Psychotherapy and pharmacotherapy are both treatment options, however, "DSM-5 does not specify treatment options for (American Psychiatric Association, 2013a) . . . [and] generally speaking, Pedophilic Disorder is not amenable to Psychotherapy, although many methods have been tried, including a Relapse-Prevention model, and CBT (Cognitive Behavioral Therapy). Pharmacotherapy using estrogens or SSRI's (Selective Serotonin Re-uptake Inhibitors) to suppress sexual desire, and castration." The website goes on to note "[t]he most viable option at this time is long term incarceration, and post release monitoring and supervision (Harvard University, 2010) through parole or House arrest (if applicable as this is not available in all jurisdictions)." https://www.theravive.com/therapedia/pedophilic-disorder-dsm--5-302.2-(f65.4) (last viewed on April 14, 2020). A second website, Lumen Abnormal Psychology, discusses five different

The law is well settled that "inmates have no constitutional right to rehabilitation or educational programs." Garrett v. Angelone, 940 F. Supp. 933, 942 (W.D. Va. 1996), aff'd, 107 F.3d 865 (4th Cir. 1997) (citing Rhodes v. Chapman, 452 U.S. 337, 348 (1981) (deprivation of rehabilitation and educational programs does not violate Eighth Amendment)); see, e.g., Acree v. Clark, No. 86-7167, 1986 U.S. App. LEXIS 37937, *1 (4th Cir. Nov. 10, 1986) ("Acree alleged that he was denied access to alcohol rehabilitation programs and vocational services. This claim fails because there is no constitutional right to such rehabilitation programs."); Fredericks v. Huggins, 711 F.2d 31, 34 (4th Cir. 1983) (stating "an individual's 'right' to detoxification is foregone once he is incarcerated in a penal institution that is unable to provide it"); Battle v. Anderson, 564 F.2d 388, 403 (10th Cir. 1977) ("An inmate does not have a federal constitutional right to rehabilitation."). Plaintiff's claim seeks a specific rehabilitation program and, therefore, as a matter of law cannot be vindicated under Bivens because he has no constitutional right to participate in a sex offender treatment program. See Paige v. Oklahoma Dep't of Corrections, 248 Fed. App'x 35, 36 (10th Cir. 2007) (rejecting a prisoner's § 1983 claim that he had been deprived of his constitutional right to receive sex offender treatment because "[i]t is a settled matter that convicted persons do not have a constitutional right to rehabilitation."); Brown, 111 Fed. Appx. at 976, 2004 U.S. App. LEXIS 20897, *10 (inmate "does not have a vested right to participate in the [sex offender treatment program] as a matter of federal law"); Stanley v. Litscher, 213 F.3d 340, 342 (7th Cir. 2000) (no liberty interest in rehabilitation program for sexual offenders); Hashman v. Heil, No. 93-1168, 1994 U.S. App. LEXIS 856, 1994 WL 6798

---

treatments supported by empirical evidence (CBT, behavioral intervention, medications, relapse, and castration). https://courses.lumenlearning.com/abnormalpsychology/chapter/pedophilia-302-2/ (last viewed on April 14, 2020). In short, there is no single treatment option for a pedophile and the fact that plaintiff wants one treatment option over another simply constitutes a disagreement over and not a denial of treatment.

(10th Cir. Jan. 11, 1994) (rejecting a prisoner's due process claim because he lacked a constitutional right to placement in a sex offender treatment program). In addition to failing to state a <u>Bivens</u> claim, the claim he has asserted is barred by the statute of limitations.

The timeliness of <u>Bivens</u> actions, like those brought pursuant to § 1983, are governed by the statute of limitation for personal injury actions in the state where the claim arose. <u>Sanchez v. United States</u>, 49 F.3d1329, 1330 (8th Cir. 1995). Plaintiff states that he was confined at MCC Chicago from July 2002 until July 2006; Illinois has a two-year limitations period for <u>Bivens</u> actions. See <u>Deleado-Brunet v. Clark</u>, 93 F.3d 339 (7th Cir. 1996). Plaintiff was housed at USP McCreary in Kentucky from July 2006, until April 2008; Kentucky applies a one-year statute of limitations to <u>Bivens</u> actions. <u>Mitchell v. Chapman</u>, 343 F.3d 811, 825 (6th Cir. 2003). Plaintiff was transferred to FCI Petersburg, Virginia in April 2008. A <u>Bivens</u> action in Virginia falls under the state's two-year statute of limitations for personal injuries contained in Virginia Code § 8.01-243(A). See <u>Blanck v. McKeen</u>, 707 F.2d 817, 819 (4th Cir. 1983). The complaint in this case was filed on October 5, 2017. [Dkt. No. 1 at 29]; <u>Houston v. Lack</u>, 487 U.S. 266 (1988) (pleading submitted by an incarcerated <u>pro se</u> litigant is filed when it is delivered to prison officials for mailing).

Although the limitations period is borrowed from state law, the question of when a cause of action accrues remains one of federal law. Under federal law, "a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." <u>Reinbold v. Evers</u>, 187 F.3d. 348, 359 (4th Cir. 1999) (citing <u>United States v. Kubrick</u>, 444 U.S. 111, 122-24 (1979)). In <u>Kubrick</u>, the Court held that for a cause of action to accrue, it is critical that the plaintiff know that he has been hurt and who inflicted the

10

injury. Id. at 120. A federal cause of action accrues upon inquiry notice. See also Gould v. United States Dep't of Health & Human Servs., 905 F.2d 738, 742 (4th Cir. 1990) (en banc).

The amended complaint establishes that plaintiff knew in 2006 that he would not be eligible for the SOTP-R until he was within 36 months of his projected release date in 2028. On August 25, 2006, defendant Rush told plaintiff he "may be considered for sex offender treatment at the SOTP-R program in FCI Butner when he [is] within 36 months from his release (or 19 years later)." [Dkt. No. 28 at 19]. In his September 19, 2006 letter to plaintiff, defendant Hernandez informed plaintiff that he could not be accepted into the SOTP-R with a projected release date of 2028. [Id. at 19-20]. Plaintiff was on at least inquiry notice, therefore, in 2006 regarding his ineligibility for the sex offender treatment programs within the FBOP. Regarding the doctor-defendants, November 20, 2009 is the last date he alleges he discussed the SOTP-R program with any of the doctors.[5] The statute of limitations lapsed several years prior to his conviction in 2013 (offense date February 18, 2010). [Id. at 24, 25].

Regarding the two non-doctor defendants, Anderson and Stine, plaintiff waited too long with regard to both. Anderson was a Case Manager at USP McCreary, and Stine was the Warden at USP McCreary. Plaintiff was at USP McCreary from July 21, 2006 and was transferred from that prison to FCI-Petersburg in April of 2008. [Dkt. No. 28 at 4, 7, 8]. The

---

[5] Plaintiff was placed on the waiting list by defendant Weisman on November 20, 2009. [Dkt. No. 28 at 22]. The complaint indicates that plaintiff was occupied with his new charge, conviction, and the related appeals from 2010 through 2015. [Id. at 23-26].

The FBOP Program Statement 5324.10, regarding sex offender treatment, states that "[t]o ensure that the maximum number of inmates have the opportunity to benefit from sex offender treatment programs, inmates are prioritized for placement based on their Projected Release Date (PRD)." Id. at 16; https://www.bop.gov/PublicInfo/execute/policysearch?todo=query&series=5000# (last viewed on April 14, 2020).

11

applicable statute of limitations for claims against both Anderson and Stine lapsed long before his 2013 conviction.

Plaintiff has not only failed to state an Eighth Amendment claim, but even if he could allege facts to substantiate an Eighth Amendment claim the claim would be barred by the applicable one or two-year statute of limitations regarding all defendants.

The continuing violation theory does not save plaintiff from dismissal. The doctrine allows untimely actions to be considered timely "so long as the last act evidencing the continuing practice falls within the limitations period" by instructing the court to "grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1295 (3d Cir. 1991). The Court of Appeals for the Third Circuit has held that "[t]o prevail on a continuing violation theory, however, the plaintiff must show more than the occurrence of isolated or sporadic acts . . .." Jewett v. Int'l Tel. and Tel. Corp., 653 F.2d 89, 91 (3d Cir. 1981). A "'continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.'" Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir. 1982) (citation omitted). The Fourth Circuit has stated

> to assert a Section 1983 claim for deliberate indifference under the "continuing violation" doctrine, a plaintiff must (1) identify a series of acts or omissions that demonstrate deliberate indifference to his serious medical need(s); and (2) *place one or more of these acts or omissions within the applicable statute of limitations for personal injury*. See Shomo [v. City of N.Y.], 579 F.3d [176,] 182 [(2d Cir. 2009)]. Thus, this principle does not apply to claims that are based on "discrete acts of unconstitutional conduct," or those that fail to identify acts or omissions within the statutory limitation period that are a component of the deliberate indifference claim. Id.

Depaola v. Clarke, 884 F.3d 481, 487 (4th Cir. 2018) (emphasis added). See Rush v. Fischer, 923 F. Supp. 2d 545, 553 (S.D. N.Y. 2013) ("[A] lack of temporal continuity in allegedly discriminatory acts is 'fatal' to a 'continuing violation' argument.").

12

Unlike the prisoner in Depaola, who alleged "the defendants' acts of deliberate indifference continued within the two years prior to the filing of his complaint," id. at 488, plaintiff alleges no violation of his rights to adequate medical care by the named defendants or other FBOP personnel from November 2009 through his filing of the complaint in October 2017, over seven years. Shomo, 579 F.3d at 183-84 (dismissing claims as to individual defendants because plaintiff failed to show after amendment that each one committed a wrongful act within the limitations period). To be sure, despite being given an opportunity to amend, plaintiff has not alleged any continuing acts after November 20, 2009. See Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999) (continuing violation doctrine does not apply unless claimant must alleges "both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy."). Indeed, plaintiff has not been housed in any of the facilities at which the named defendants work since April 8, 2013. See, infra at note 6. Accordingly, it is not surprising that plaintiff has not alleged any act by the named defendants within the two years prior to filing the complaint.

### III. FTCA

Plaintiff alleges two claims (Count 2 and Count 3) under the FTCA. In Count 2, he alleges that the named defendants failed to provide him with the care to which he was entitled under 18 U.S.C. § 4042(a)(2). In Count 3, plaintiff alleges that Drs. Heck, Weisman, and Nagle failed to implement a Correctional Management Plan (CMP) for plaintiff upon his arrival at FCI-Petersburg, which breached their duty of care under 18 U.S.C. § 4042(a)(2). [Dkt. No. 28 at 32-34]. While medical care for prisoners is mandated by the Eighth Amendment, for purposes of an FTCA claim this duty is provided by statute, see 18 U.S.C. § 4042, which provides that the standard of duty owed is that of "reasonable care." See Johnson v. U. S. Government, 258 F.

Supp. 372, 376 (E.D. Va. 1966) (under § 4042, a prison official's duty requires only the exercise of ordinary diligence under the circumstance). This statutory duty has been interpreted as requiring employees of the Bureau of Prisons to exercise "ordinary diligence to keep prisoners safe and free from harm." See Buchanan v. United States, 915 F.2d 969, 971 (5th Cir. 1990); Beckwith v. Hart, 263 F. Supp. 2d 1018, 1022 (D. Md. 2003); see also Owens v. Haas, 601 F.2d 1242, 1249 (2d Cir. 1979) (stating that "the federal government owes a duty of reasonable care").

November 20, 2009 is the last date listed by plaintiff in his complaint that he had contact of any sort with anyone named as a defendant in either FTCA claim. After his arrest on the new charge, plaintiff apparently remained at FCI-Petersburg through May 16, 2012 when he was transferred to Northern Neck Regional Jail (NNRJ) in Warsaw, Virginia. He was transferred back to FCI-Petersburg on February 12, 2013, and then transferred to FCI-Terre Haute on April 8, 2013.[6] The complaint was not filed until October 5, 2017, over four years later.

"The applicable statute of limitation within the framework of the FTCA provides: 'A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues. . ..' 28 U.S.C. § 2401(b). This time limitation is jurisdictional and nonwaivable." Gould v. U. S. HHS, 905 F.2d 738, 741

---

[6] It is well-settled that federal courts may take judicial notice of proceedings in other courts of record. Lyons v. Stovall, 188 F.3d 327, 333 (6th Cir. 1999); Tinker v. Sears, Roebuck & Co., 127 F.3d 519, 524 (6th Cir. 1997). "[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records." Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989). Records from other actions plaintiff has filed in federal court establish his whereabouts after he left FCI-Petersburg on May 16, 2012 when he notified the United States District Court for the Northern District of Illinois that he had been moved to the Northern Neck Regional Jail, Warsaw, Virginia. United States v. Sebolt, No. 1:10cv6361 (N.D. Ill.), Dkt. No. 20. On February 12, 2013, plaintiff informed that court that he had been transferred back to FCI-Petersburg. Id. at Dkt. No. 23. Plaintiff was transferred to FCI-Terre Haute on April 8, 2013. Sebolt v. Federal Bureau of Prisons, No. 1:14cv2797 (N.D. Ill.), Dkt. No. 7 at 1.

14

(4th Cir. 1990) (citation omitted).[7]  For an inmate's claim to be timely, he must have filed it within two years of the date of accrual, which is when the doctor met with the inmate and denied his request for treatment.  See Gordon v. Pugh, No. 06-4266, 235 Fed. Appx. 51, 53, 2007 U.S. App. LEXIS 12715, *3 (3d Cir. May 31, 2007) (affirming dismissal on statute of limitations because inmate did not file within two-year statute of limitations, which began to run on date doctor denied inmate's request for hepatitis treatment).[8]  Plaintiff signed his initial complaint on October 5, 2017 but alleges no contact with any of the named defendants within two years prior to that date.

- Plaintiff met defendant Pindelski at the Metropolitan Correctional Center (MCC) in Chicago, Illinois.  [Dkt. No. 28 at 7].  Plaintiff alleges his first contact with Pindelski was July 8, 2002 at MCC.  Plaintiff was given information about the SOTP-R and asked Pindelski on December 22, 2003 why he had to wait until the end of his sentence for the treatment.  On May 31, 2006, plaintiff brought up the SOTP-R program and requested a transfer to FCI-Butner where the program was located at that time.  [Id. at 18].

- Plaintiff met defendant Rush at USP-McCreary and plaintiff alleges his first contact with her was on August 25, 2006.  [Id. at 19].  Rush spoke with plaintiff at some time prior to his transfer to FCI-Petersburg, which occurred in April 2008.  [Id. at 21].

- Defendant Hernandez worked at FCI-Butner, North Carolina and responded to plaintiff's August 29, 2006 letter on September 19, 2006.  [Id. at 19].  Defendant Hernandez told plaintiff he was not eligible for the SOTP-R program because his projected release date was 2028 and the earliest he would be eligible was five years prior to that date.  [Id. at 19-20].

- On November 8, 2007, defendant Stine acknowledged USP-McCreary did not offer sex offender treatment programs and referred plaintiff to the Psychological Services Unit to discuss his potential for sex offender treatment.  [Id. at 20].

- While at FCI-Petersburg, plaintiff only mentions meeting defendant on one date, November 20, 2009, and that Weisman placed him on the waiting lost for SOTP-R.  [Id. at 22].

---

[7] Section 2401(b) requires that a claimant must both present a claim to the federal agency within two years of the time the cause of action accrues and then commence suit within six months of the final denial of the claim.  See Willis v. United States, 719 F.2d 608, 612-13 (2d Cir. 1983); accord Ellison v. United States, 531 F.3d 359, 362, 363 (6th Cir. 2008).

[8] Plaintiff admits the FBOP found his claim barred by the statute of limitations.  [Dkt. No. 28 at 6].

Plaintiff 's response to the Court's timeliness concerns expressed in its November 16, 2017 order is his assertion his claim accrued on October 5, 2015 when the United States Supreme Court denied his petition for certiorari from his 2013 criminal conviction – a date that has no relevant relationship to the actions of the named defendants. Plaintiff also omits that he was housed at FCI-Terre Haute, Indiana beginning on April 8, 2013, see, supra at note 5, and at some point, was transferred to USP-Tucson where he was detained at the time he filed the initial complaint. [Dkt. No. 1 at 28]. More than four years elapsed between his transfer to FCI-Terre Haute and the signing of his initial complaint. Plaintiff, however, raises no allegations against the named defendants during that four-year time frame. Consequently, both of plaintiff's FTCA claims are barred by the statute of limitations.

Accordingly, it is hereby

ORDERED that this action be and is DISMISSED WITH PREJUDICE because his action has no merit, pursuant to 28 U.S.C. § 1915(e)(2); and it is further

ORDERED that plaintiff is advised that, pursuant to 28 U.S.C. § 1915(g), this dismissal may affect his ability to proceed in forma pauperis in future civil actions; and it is further

ORDERED that the Clerk record this dismissal for purposes of the Prison Litigation Reform Act.

To appeal, plaintiff must file a written notice of appeal with the Clerk's Office within thirty (30) days of the date of this Order. See Fed. R. App. P. 4(a). A written notice of appeal is a short statement stating a desire to appeal this Order and noting the date of the Order plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the Court.

      The Clerk is directed to send of copy of this Memorandum and Order to plaintiff and to close this civil action.

/s/
_____
Anthony J. Trenga
United States District Judge

Entered this 15th day of April 2020.

Alexandria, Virginia

17